United States District Court
For the Northern District of California

1
2
3
4
5
6          IN THE UNITED STATES DISTRICT COURT
7         FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
9   TED F. HARVEY, an individual,      ) Case No. 12-3238-SC
                                       )
10              Plaintiff,             ) ORDER RE: DEFENDANT'S
                                       ) MOTIONS TO DISMISS AND TO
11      v.                             ) STRIKE PORTIONS OF FIRST
                                       ) AMENDED COMPLAINT
12  BANK OF AMERICA, N.A., a national  )
    association, and DOES 1 through     )
13  50, inclusive,                     )
                                       )
14              Defendants.            )
                                       )
15  _____  )
16
17  **I.    INTRODUCTION**

18       On July 31, 2012, Plaintiff Ted F. Harvey ("Plaintiff"), a

19  homeowner, filed an amended complaint in this mortgage foreclosure

20  case.  ECF No. 12 ("Am. Compl.").  The thrust of his amended

21  complaint is that Defendant Bank of America N.A. ("Defendant" or

22  "BOA") encouraged him to stop making his mortgage payments so that

23  he could qualify for a loan modification under the Home Affordable

24  Modification Program ("HAMP"), but that Defendant then, contrary to

25  its oral promises, denied Plaintiff's HAMP application, charged him

26  late fees and attorney fees, caused his previously excellent credit

27  to become seriously damaged, and instituted foreclosure proceedings

28  against him.  No foreclosure sale has yet taken place.  The amended

**United States District Court**
For the Northern District of California

complaint asserts nine claims: (1) violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 <u>et seq.</u> ("ECOA"); (2) breach of the implied covenant of good faith and fair dealing; (3) contract reformation; (4) promissory estoppel; (5) wrongful foreclosure under Cal. Civ. Code § 2924 <u>et seq.</u>; (6) "false light" invasion of privacy; (7) intentional misrepresentation; (8) negligent misrepresentation; and (9) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 <u>et seq.</u> ("UCL").

Defendants have two motions pending before this Court: (1) a motion to dismiss the FAC, ECF No. 15 ("MTD"), and (2) a motion to strike portions of the FAC, ECF No. 14 ("MTS").  Both motions are fully briefed.  ECF Nos. 17 ("Opp'n to MTD"), 18 ("Opp'n to MTS"), 19 ("Reply ISO MTS"), 20 ("Reply ISO MTD").[1]  Both are suitable for decision without oral argument.  Civ. L.R. 7-1(b).  As set forth herein, the Court GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss, and DENIES Defendant's motion to strike.

## II.   **BACKGROUND**

In the procedural posture of this case, the Court takes its account of the facts from the material allegations of Plaintiff's amended complaint and construes them in the light most favorable to Plaintiff.  On November 7, 2005, Plaintiff refinanced his existing mortgage loan with Countrywide Home Loans.  Am. Compl. ¶ 9.  To secure the refinancing, Plaintiff executed a promissory note and deed of trust ("DOT") in favor of Countrywide.  <u>Id.</u>  Defendant

---

[1] Defendant submitted a request for judicial notice in support of its motion to dismiss.  ECF No. 16 ("RJN").  Plaintiff does not oppose the request and the documents contained in the RJN are public records.  The Court GRANTS Defendant's request and takes judicial notice of the documents.

later acquired Plaintiff's loan and is the current promissee of the note and beneficiary of the DOT.  Id.

In or around March or April 2009, Plaintiff was current in his loan payments and maintained excellent credit.  Id. ¶ 10.  He contacted Defendant regarding a loan modification.  Id.  During these initial conversations, Plaintiff allegedly spoke with an agent of Defendant who identified himself as Michael Z. Hollander ("Hollander").  Id. ¶ 11.  Hollander allegedly told Plaintiff that he, Plaintiff, was the "gold standard" of borrowers and that he "would qualify for a HAMP modification[;] he had only to be late" in making payments on his loan.  Id.  Plaintiff alleges that Hollander told him that if he "went late," he would receive priority treatment in the loan modification review process and "he would not face foreclosure or other negative consequences."  Id.  Plaintiff alleges that, based on these representations, he began to miss his loan payments.  Id. ¶¶ 11-12.

On August 31, 2009, Plaintiff allegedly submitted a loan modification to a representative of Defendant, Jill Ballentine.  She allegedly informed Plaintiff that "the loan modification would take 45-90 days."  Id. ¶ 16.  Over the next several months, Plaintiff allegedly inquired on multiple occasions into the status of the modification but received inconclusive responses.  Id. ¶¶ 17-19.  Plaintiff alleges that, on March 8, 2010, he spoke to a BOA representative, Grace Garo ("Garo").  Id. ¶¶ 20-21.  Garo allegedly told Plaintiff that his HAMP modification request had been denied on January 13, 2010, but that the denial was erroneous and he actually qualified for the HAMP program.  Id. ¶¶ 21-22.  Garo allegedly promised to send a new package of forms.  Id. ¶ 22.

When Plaintiff received the forms, however, they were not for a HAMP modification but a National Home Ownership Retention Program (NHRP) offer.  Id. ¶ 23.  Plaintiff allegedly rejected this offer because it had less favorable terms than a HAMP modification and he would not have "gone late" to obtain an NHRP offer.  Id. ¶¶ 24-25.  Plaintiff alleges that he contacted a BOA representative identifying herself only as "Shayna," who told Plaintiff he had been denied a HAMP modification and instead "shunted" into the NHRP program because the subject property was not Plaintiff's primary residence.  Id. ¶ 25.  Plaintiff alleges that this was clearly erroneous, that he had lived on the subject property for over twenty-five years, and that Defendant should have known that due to their long correspondence.  Id. ¶ 26.  Shayna allegedly encouraged Plaintiff to submit a new HAMP modification application and promised to send one to him.  Id.

Plaintiff alleges that, on June 3, 2010, Defendant sent Plaintiff the HAMP application.  Id. ¶ 27.  On January 6, 2011, Defendant allegedly denied Plaintiff's application for a HAMP modification.  Id. ¶ 29.  Following this denial, Plaintiff allegedly contacted Defendant to resume making his regular payments.  Id. ¶ 30.  However, Defendant allegedly refused to take Plaintiff's payments.  Id.  Plaintiff alleges that Defendant, throughout the pendency of Plaintiff's loan modification application and contrary to its earlier promises, charged Plaintiff late fees and penalties, and reported Plaintiff late to credit bureaus, damaging Plaintiff's credit rating.  Id.  Defendant allegedly told Plaintiff he was responsible for the penalties that accrued during the loan modification application period.  Id.

**United States District Court**
For the Northern District of California

On March 1, 2011, Defendant allegedly caused to be recorded a notice of default for the subject property.  Id. ¶ 31; RJN Ex. B (notice of default ("NOD")).  On June 2, 2011, Plaintiff received a notice of trustee sale which had been recorded on May 26, 2011, and which set the foreclosure sale for June 23, 2011.  Am. Compl. ¶ 32; RJN Ex. C (notice of trustee sale ("NTS")).  The foreclosure date has since been postponed several times.  Am. Compl. ¶ 32. Plaintiff alleges that he remains willing and able to pay his "regular," that is, his previous monthly payment.  Id.

In early 2012, Plaintiff filed a complaint, as well as an amended complaint, in California Superior Court.  RJN Exs. E & F (state court complaints).  On June 14, 2012, Plaintiff asked the state court to enter a voluntary dismissal in his case, which the state court did on June 18.  Id. Exs. D & G (state court docket, request for dismissal, and notice of dismissal).  On June 22, Plaintiff filed his initial complaint before this Court.  ECF No. 1.[2]  Defendant moved to dismiss the complaint, ECF No. 9, but Plaintiff mooted that motion by filing an amended complaint on July

---

[2] Plaintiff's complaint could be clearer about the basis of this Court's jurisdiction.  Nevertheless, this Court is satisfied that it has diversity jurisdiction under 28 U.S.C. § 1332.  The object of this litigation is either Plaintiff's San Ramon residence, which likely is worth more than the jurisdictional amount of $75,000, or the amount owing under the NOD, which is $75,526.38.  NOD at 1. Either way, the amended complaint places the required amount in controversy.  As for citizenship, Plaintiff alleges that he is a longtime California resident, and, under Wachovia Bank v. Schmidt, 546 U.S. 303 (2006), Defendant Bank of America N.A. is a citizen of North Carolina for purposes of diversity jurisdiction.  E.g., De Long v. Bank of Am., N.A., 11-CV-06388-LHK, 2012 WL 1498868 (N.D. Cal. Apr. 27, 2012); Anderson v. Bank of Am., N.A., C 06-1120 SBA, 2006 WL 889491 (N.D. Cal. Apr. 5, 2006); Delgado v. Bank of Am. Corp., 1:09CV01638 AWI DLB, 2009 WL 4163525 (E.D. Cal. Nov. 23, 2009); Salmon v. Bank of Am. Corp., CV-10-446-RMP, 2011 WL 2174554 (E.D. Wash. May 25, 2011).  Plaintiff is advised that any further pleadings must comply with this Court's Civil Local Rule 3-5 by clearly setting forth the bases of federal jurisdiction.

5

31, 2012.  The instant motions to dismiss and to strike were filed on August 7, 2012.

## III. **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 663 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." Starr v. Baca, 633 F.3d 1191, 1204 (9th Cir. 2011).

In addition to these general pleading standards, a heightened standard applies to claims sounding in fraud. See Fed. R. Civ. P. 9(b).  "To satisfy Rule 9(b), a pleading must identify 'the who,

6

**United States District Court**
For the Northern District of California

what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011).

## IV. DISCUSSION

Defendant moves to dismiss on three material grounds.[3]  First, Defendant argues that Plaintiff must allege tender to challenge the contemplated non-judicial foreclosure but has not done so, and therefore that all Plaintiff's claims must be dismissed.  MTD at 4. Second, Defendant argues that all of Plaintiff's claims spring from the denial of his HAMP application and therefore must be dismissed because there is no private right of action under HAMP.  Id. at 6-7.  Third, Defendant challenges each individual claim on the ground that it fails to state a claim upon which relief can be granted. Id. at 8-25.  The Court addresses each argument in order and then concludes by turning to Defendant's Rule 12(f) motion to strike.

### A. Tender

It is well-settled that a plaintiff seeking to set aside a foreclosure sale must tender, that is, must offer in good faith to pay the full amount of the secured debt.  Arnolds Mgmt. Corp. v.

---

[3] Defendant also offers two grounds which do not bear in-depth discussion.  Defendant first argues that Plaintiff's entire amended complaint must be dismissed as insufficiently pled.  MTD at 3-4. The argument lacks merit since the pleading is not, as Defendant asserts, entirely devoid of facts.  See supra Section II.  Thus, factual defects should be challenged in the context of individual legal claims rather than as a global challenge to the entire pleading.  Defendant next argues that the amended complaint, which Defendant construes as challenging Defendant's right to foreclose, must be dismissed because judicially noticeable documents show that Defendant has such a right.  MTD at 5-6.  The argument fails because it is circular.

1  Eischen, 158 Cal. App. 3d 575, 578 (Cal. Ct. App. 1984); Karlsen v.

2  Amer. Sav. & Loan Ass'n, 15 Cal. App. 3d 112, 117 (Cal. Ct. App.

3  1971); see also Plastino v. Wells Fargo Bank, --- F. Supp. 2d ---,

4  2012 WL 2061515, at *5 (N.D. Cal. 2012); Soares v. ReconTrust Co.,

5  N.A., 12-00070, 2012 WL 1901234, at *10 (N.D. Cal. May 25, 2012).

6  However, certain exceptions to the tender rule apply, such as when

7  a plaintiff attacks the underlying validity of the debt or when

8  imposing the tender requirement would be inequitable.  See Lona v.

9  Citibank, N.A., 202 Cal. App. 4th 89, 112-13 (Cal. Ct. App. 2011)

10 (identifying four exceptions).  Moreover, tender is required only

11 when a plaintiff seeks the remedy of setting aside a foreclosure

12 sale.  Soares, 2012 WL 1901234 at *10.

13      Here, Plaintiff's amended complaint does not expressly pray to

14 set aside the impending foreclosure sale.  See Am. Compl. at 19.

15 For that reason alone, tender is not required.  Plaintiff's

16 opposition, however, suggests that Plaintiff likely intended to

17 pray for such relief and hence may do so when and if he files a

18 second amended complaint.  See Opp'n to MTD at 7.  Plaintiff argues

19 that it would be inequitable to require tender when he only

20 defaulted at Defendant's invitation.  Id.; see also Am. Compl. ¶¶

21 11-12 (alleging that Plaintiff had never missed a payment before

22 doing so to become eligible for a HAMP modification).  Defendant

23 fails to address the argument other than to repeat the general rule

24 requiring tender, without acknowledging the exceptions' existence.

25 On the state of the arguments presented thus far, the Court is

26 tentatively inclined to rule that, for pleading purposes only,

27 Plaintiff's allegation that Defendant induced his default would

28 suffice to excuse Plaintiff from the tender rule, either for

**United States District Court**
For the Northern District of California

1  reasons of equity or as a challenge to the portion of the

2  underlying indebtedness that prompted Defendant to foreclose.

3  Tender or an excuse from tender would only be required if Plaintiff

4  amends his complaint to challenge Defendant's right to foreclose.

5      In summary, the Court declines to dismiss the amended

6  complaint on the ground that Plaintiff has failed to allege an

7  offer to tender.  Plaintiff is advised that any future amended

8  pleading should clearly and specifically pray for all the relief

9  requested, along with viable claims that would entitle Plaintiff to

10  such relief.  If that relief includes setting aside the planned

11  foreclosure, Plaintiff must clearly and specifically allege either

12  (1) a good-faith offer of tender or (2) a reason why Plaintiff is

13  excused from the tender requirement.

14      **B.    Denial of HAMP Modification**

15      Defendant moves to dismiss the amended complaint on the ground

16  that it is, at root, a challenge to Defendant's denial of

17  Plaintiff's HAMP application.  In other words, Defendant construes

18  the amended complaint as bringing a single HAMP-based claim

19  "disguised as other claims."  MTD at 6-8.  Starting from this

20  premise, Defendant argues that, because there is no private right

21  of action under HAMP, the amended complaint must be dismissed.

22      Defendant is correct in saying there is no private right of

23  action for HAMP violations.  E.g., Lucia v. Wells Fargo Bank, N.A.,

24  798 F. Supp. 2d 1059, 1066 (N.D. Cal. 2011); Cleveland v. Aurora

25  Loan Servs., LLC, 2011 U.S. Dist. LEXIS 55168, at *10-12 (N.D. Cal.

26  May 24, 2011) (collecting other cases).  Nevertheless, Defendant's

27  argument is unavailing because the amended complaint does not seek

28  a HAMP modification or challenge Defendant's denial of Plaintiff's

1   HAMP application.   Rather, as Plaintiff points out, Opp'n to MTD at

2   9, 17, the conduct at the core of the lawsuit is Defendant's

3   alleged breach of its alleged promise to refrain from imposing

4   negative consequences on Plaintiff as a result of his "going late"

5   on his mortgage payment in order to become eligible to apply for a

6   HAMP modification.   In other words, Plaintiff's claims do not

7   spring from Defendant's denial of Plaintiff's HAMP application but

8   from Defendant's alleged breach of promises made before and during

9   the application process.   Defendant's argument misses this

10  distinction and therefore offers the Court no reason to dismiss

11  Plaintiff's amended complaint.

12       Having addressed Defendant's challenges to the amended

13  complaint as a whole, the Court now addresses Defendant's

14  challenges to individual claims.

15       C.   **Claim 1: ECOA**

16       Congress passed the ECOA to prevent discrimination by

17  creditors against certain classes of credit applicants:

18            It shall be unlawful for any creditor to
          discriminate against any applicant, with
19        respect to any aspect of a credit transaction--
          (1) on the basis of race, color, religion,
20        national origin, sex or marital status, or age
          (provided the applicant has the capacity to
21        contract); (2) because all or part of the
          applicant's income derives from any public
22        assistance program; or (3) because the
          applicant has in good faith exercised any right
23        under this chapter.

24  15 U.S.C. § 1691(a).   Plaintiff seeks relief under a provision of

25  ECOA which requires creditors to notify applicants of the outcome

26  of their credit applications within thirty days of the application.

27  Id. § 1691(d)(1); see also Am. Compl. ¶¶ 35-36 (alleging delay of

28  several months).

1    Though the Ninth Circuit has yet to articulate the elements of

2  an ECOA claim, numerous district courts in this circuit have held

3  that, to state a claim under ECOA, a plaintiff must allege that:

4  "(1) she is a member of a protected class; (2) she applied for

5  credit with defendants; (3) she qualified for credit; and (4) she

6  was denied credit despite being qualified."  Hafiz v. Greenpoint

7  Mortg. Funding, Inc., 652 F. Supp. 2d 1039, 1045 (N.D. Cal. 2009)

8  (citing Chiang v. Veneman, 385 F.3d 256, 259 (3d Cir. 2004)).

9  Under this standard, Plaintiff's complaint falls short of stating a

10 prima facie claim.  First, as Defendant correctly points out, MTD

11 at 10, Plaintiff does not allege that he is a member of a class

12 protected by ECOA.  Neither does Plaintiff adequately allege that

13 the HAMP modification application was an application for "credit,"

14 as that term is used in the context of ECOA.

15    Accordingly, Plaintiff's claim is DISMISSED as insufficiently

16 pled.  The Court grants Plaintiff leave to amend this claim, but

17 Plaintiff is advised that the amendment must assert a prima facie

18 ECOA claim consistent with the guidance contained herein or else be

19 dismissed with prejudice.

20    **D.    Claim 2: Implied Covenant of Good Faith and Fair Dealing**

21    "The covenant of good faith and fair dealing, implied by law

22 in every contract, exists merely to prevent one contracting party

23 from unfairly frustrating the other party's right to receive the

24 benefits of the agreement actually made."  Guz v. Bechtel Nat.

25 Inc., 24 Cal. 4th 317, 349 (Cal. 2000).  The covenant "cannot

26 impose substantive duties or limits on the contracting parties

27 beyond those incorporated in the specific terms of their

28

agreement." Id. at 349-50.  The elements of a claim for breach of the covenant of good faith and fair dealing are:

> (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract required him to do or that he was excused from having to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff.

Woods v. Google, Inc., --- F. Supp. 2d ---, 2012 WL 3673319, at *8 (N.D. Cal. 2012) (citing Judicial Counsel of California Civil Jury Instructions § 325 (2011)).

Plaintiff's amended complaint connects facts with the elements of this cause of action, but the allegations do not give rise to a viable claim.  The problem is that Defendant's alleged conduct is not related to the contract between the parties, that is, the DOT and related note.  Plaintiff alleges not a violation of his standing contracts with Defendant, but of the entirely separate promises Defendant allegedly made to forego foreclosure and other penalties while the loan modification was pending.  Cf. Plastino, 2012 WL 2061515, at *10 (defendant's breach of promise to postpone foreclosure did not violate covenant implied in DOT and mortgage). Plaintiff alleges that Defendant breached the implied covenant

> when it instructed him to miss loan payments in order to be considered for a loan modification, promised not to count Plaintiff late or foreclose on his property for missing payments in pursuit of a loan modification, and then unreasonably strung out the loan modification process until late fees and attorneys' fees grew to an insurmountable amount.

1   Am. Compl. ¶ 44.   "That might form the basis for some cause of

2   action, but not for breach of the implied covenant in the deed of

3   trust and mortgage."  <u>Plastino</u>, 2012 WL 2061515, at *10.  Plaintiff

4   alleges breaches of promises that are independent from the ones

5   contained in the DOT and note and which therefore cannot sustain a

6   claim for a breach of the covenant implied in the DOT and note.

7        Accordingly, the Court DISMISSES this claim.  Plaintiff has

8   leave to amend it, but is cautioned that any amendment must specify

9   a breach arising from a specific provision of the DOT or note.

10       **E.    <u>Claim 3: Reformation of Contract</u>**

11       For purposes of federal pleading, reformation is a remedy, not

12   a claim.  <u>Santos v. Countrywide Home Loans</u>, CIV.20902642WBS DAD,

13   2009 WL 3756337, at *1 (E.D. Cal. Nov. 6, 2009) (citing <u>Hafiz</u>, 652

14   F. Supp. 2d at 1048).  Here, Plaintiff seeks reformation of section

15   12 of the DOT, which says: "Any forbearance by Lender [i.e.,

16   Defendant] in exercising any right or remedy . . . shall not be a

17   waiver of or preclude the exercise of any right or remedy."  Am.

18   Compl. ¶ 53.  Plaintiff avers that this provision of the DOT

19   conflicts with California Civil Code sections 1511 and 1512.

20   According to Plaintiff, those code sections excuse a debtor's

21   performance if the creditor does something which naturally would,

22   and actually does, induce the debtor's non-performance, <u>see</u> Cal.

23   Civ. Code § 1511(3), though the debtor is still entitled to the

24   creditor's performance, <u>see</u> Cal. Civ. Code § 1512.  Plaintiff

25   asserts that "Defendant's instruction to [P]laintiff to withhold

26   payment waives its claim to those payments," Am. Compl. ¶ 52,

27   notwithstanding the provisions of the DOT.  Plaintiff alleges that

28   Defendant "intentionally drafted Section 12" to "trap borrowers

United States District Court
For the Northern District of California

1  into a default situation by appearing to waive payments while a

2  loan modification is supposedly under review, and then demanding

3  all these payments at some unknown time in the future."  Id. ¶¶ 54-

4  55.  Plaintiff seeks to reform section 12 of the DOT to exclude

5  situations where Defendant intentionally induces a party to rely on

6  an apparent waiver, on the ground that the section is

7  unconscionable.  Id. ¶ 56.

8       Plaintiff's claim must be dismissed because it fails to set

9  forth a cognizable legal theory.  Plaintiff challenges section 12

10  on grounds of unconscionability (though the allegations perhaps

11  more naturally suggest the contract doctrine of illegality), but

12  reformation is proper "only in cases of fraud and mistake."

13  Skinner v. Northrop Grumman Ret. Plan B, 673 F.3d 1162, 1166 (9th

14  Cir. 2012).  To the extent that Plaintiff premises his request for

15  reformation on a fraud theory, the claim fails as insufficiently

16  pled, because the amended complaint contains no allegations

17  pertaining to the circumstances surrounding the drafting or signing

18  of the DOT, let alone the particularized allegations required to

19  plead a claim sounding in fraud.  Fed. R. Civ. P. 9(b).  As

20  discussed in Section IV.I infra, Plaintiff's claims of fraud in

21  connection with Defendant's alleged promises of penalty-free late

22  payments are also insufficiently pled.

23       Defendant argues that the reformation "claim" must be

24  dismissed with prejudice as time-barred because the DOT was signed

25  in 2005 and the statute of limitations period has elapsed,

26  regardless of whether Plaintiff seeks reformation on a contract

27  theory (four year limitation) or a fraud theory (three year

28  theory).  MTD at 13; Reply ISO MTD at 7.  The argument is

**United States District Court**
For the Northern District of California

unavailing.  Under the discovery rule, a cause of action does not accrue "until the plaintiff discovers, or has reason to discover, the cause of action."  <u>E-Fab, Inc. v. Accountants, Inc. Servs.</u>, 153 Cal. App. 4th 1308, 1318 (Cal. Ct. App. 2007) (internal quotation marks omitted).[4]  Plaintiff's factual allegations are not yet sufficiently developed to allow the Court to determine whether Plaintiff had reason to discover his cause of action (if any) before the applicable statute of limitations expired.  Nor are his legal claims developed to the degree that would enable the Court to determine which limitations period applied.

Accordingly, the Court DISMISSES Plaintiff's reformation claim.  In his amended complaint, Plaintiff may seek the remedy of reformation, but only if he asserts a separate claim upon which such relief can be granted.

**F.    Claim 4: Promissory Estoppel**

"Promissory estoppel requires: (1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his or her reliance."  <u>Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co., Inc.</u>, 688 F. Supp. 2d 940, 953 (N.D. Cal. 2010).  "The purpose of this doctrine is to make a promise that lacks consideration (in the usual sense of something bargained for and given in exchange) binding under certain circumstances."  <u>Id.</u>

---

[4] Defendant argues that, under California law, the discovery rule applies only to fraud claims.  Reply ISO MTD at 7.  Defendant is wrong.  The discovery rule applies to fraud actions, but not <u>only</u> to fraud actions.  <u>See</u>, <u>e.g.</u>, <u>Norgart v. Upjohn Co.</u>, 21 Cal. 4th 383, 397-98 (1999) (contemplating application of discovery rule to claims with differing statutes of limitation).

**United States District Court**
For the Northern District of California

1    Plaintiff alleges that "[i]n or around March or April 2009,"

2 Plaintiff received promises from Defendant's agent, Hollander, that

3 if Plaintiff stopped making payments on his loan for 90 days, he

4 would receive priority treatment in the loan modification review

5 and would not face foreclosure or other negative consequences.  Am.

6 Compl. ¶¶ 11, 59.  Plaintiff alleges that he relied on this promise

7 by missing three of his monthly payments, despite never having

8 missed a payment previously.  Id. ¶¶ 12, 60.  Plaintiff also

9 alleges damage in the form of a diminished credit score, the

10 institution of foreclosure proceedings against him, and the

11 accumulation of late fees and foreclosure-related attorney fees.

12 Id. ¶¶ 60-62.  For pleading purposes, these allegations set forth a

13 prima facie promissory estoppel claim arising from the alleged

14 promise made to Plaintiff by Hollander.[5]

15    Defendant argues that Plaintiff has not adequately alleged

16 damages.  MTD at 16.  The cases cited by Defendant, however, are

17 inapposite: They all concern instances where a lender gratuitously

18 promised to postpone a foreclosure proceeding.  As Plaintiff points

19 out, Opp'n to MTD at 16, that is not the nature of the promise

20 alleged here.  Plaintiff alleges that Defendant promised not to

21 foreclose at all if Plaintiff purposely missed payments.  The

22 difference matters.  In the cases cited by Defendant, the borrower

23 was already in default, and thus no legal damage resulted from

24 timely rather than postponed foreclosure.  In this case, however,

25 Plaintiff alleges that Defendant induced his default, i.e., that he

26

27 [5] Plaintiff's promissory estoppel claim touches only on the
promises allegedly made by Hollander.  Plaintiff therefore does not
28 assert a promissory estoppel claim on the basis of other alleged
promises, for example, those allegedly made by Garo.

1 never would have been subject to foreclosure or the alleged

2 penalties and fees if not for his reliance on Defendant's alleged

3 promises.

4     Defendant also argues that Plaintiff's claim must fail because

5 it is barred by the statute of frauds.  MTD at 17.  This argument,

6 too, is unavailing because it misapprehends the nature of the

7 alleged promise.  Plaintiff does not allege a promise to modify the

8 terms of the DOT.  He alleges promises independent of those

9 contained in the DOT, namely, that Defendant would refrain from

10 foreclosing or imposing other negative consequences if Plaintiff

11 went late on his payments to apply for a loan modification.

12     The Court harbors some concern about the specificity of

13 Plaintiff's pleading of Hollander's alleged promise.  Plaintiff

14 does not provide, for instance, specific dates of the conversations

15 with Hollander, or clarify how many conversations there were.  See

16 Am. Compl. ¶ 11.  However, the Court concludes that the allegations

17 are sufficiently detailed to give Defendant fair notice of the

18 nature of Plaintiff's claim and sufficiently plausible such that it

19 is not unfair to subject Defendant to discovery on this claim.  See

20 Starr, 633 F.3d at 1204.  Accordingly, the Court DENIES Defendant's

21 motion to dismiss Plaintiff's promissory estoppel claim.  The claim

22 remains undisturbed.

23     **G.   Claim 5: Wrongful Foreclosure**

24     Plaintiff avers that the foreclosure proceedings instituted by

25 Defendant violate California's non-judicial foreclosure scheme, set

26 forth at California Civil Code § 2924 et seq.  Am. Compl. ¶¶ 67-71.

27 The Court DISMISSES this claim as insufficiently pled: Plaintiff

28 fails to allege specifically which conduct by Defendant violated

1   the law, or even to identify which sections of the voluminous

2   statutory scheme Defendant allegedly violated.  Plaintiff has leave

3   to amend this claim but must allege specific conduct that violates

4   specific sections of California's non-judicial foreclosure law,

5   along with the other requisites of a cognizable claim.  Failure to

6   do so may result in dismissal with prejudice.

7   **H.   Claim 6: "False Light" Invasion of Privacy**

8         The thrust of this claim is that Defendant placed Plaintiff in

9   a false light by reporting his default to the three major credit

10  reporting agencies when in fact Plaintiff was not in default.

11  Without reaching the merits of the claim, the Court dismisses it

12  with prejudice because it is time-barred.

13        "A one-year statute of limitation applies to claims for false

14  light invasion of privacy." Lauter v. Anoufrieva, 642 F. Supp. 2d

15  1060, 1105 (C.D. Cal. 2009) (citing Cain v. State Farm Mut. Auto.

16  Ins. Co., 62 Cal. App. 3d 310, 313 (Cal. Ct. App. 1976); Cal. Civ.

17  Pro. Code § 340).  Plaintiff filed his federal complaint on June

18  22, 2012, and only added a false light claim in his amended

19  complaint, filed July 31, 2012.  Even if the Court assumes that

20  Plaintiff adequately alleges a prima facie false light claim and

21  that the claim accrued no later than the date he discovered that

22  Defendant had reported him late to the credit reporting bureaus,

23  the operative complaint establishes that Plaintiff did, or should

24  have, learned of this no later than June 2, 2011, the date that

25  Plaintiff allegedly received a Notice of Trustee Sale and the last

26  date mentioned in Plaintiff's pleading.  Am. Compl. ¶ 32.  Indeed,

27  the pleading suggests that Plaintiff learned of the alleged damage

28  to his credit months earlier, in January 2011, when Defendant

United States District Court
For the Northern District of California

1   allegedly rejected his attempt to resume his normal mortgage

2   payment.  See id. ¶ 30.  Either way, the face of Plaintiff's

3   pleading establishes that his false light claim is time-barred.

4   Accordingly, the Court DISMISSES that claim with prejudice.

5       **I.**    **Claims 7 & 8: Intentional & Negligent Misrepresentation**

6       Plaintiff's intentional misrepresentation claim proceeds on an

7   estoppel theory, that is, the theory that Defendant made a promise

8   that it never intended to honor.  See Am. Compl. ¶¶ 79-82.  The

9   elements of an estoppel claim are: "(1) a representation of

10  material fact by defendant, (2) with knowledge, actual or virtual,

11  of the true facts, (3) to a party actually or permissively ignorant

12  of the truth, (4) with the intention, actual or virtual, that the

13  other party act upon it, and (5) the other party was induced to

14  act." Cedars Sinai Med. Ctr. v. Mid-W. Nat. Life Ins. Co., 118 F.

15  Supp. 2d 1002, 1012 (C.D. Cal. 2000) (citing San Diego Mun. Credit

16  Union v. Smith, 176 Cal. App. 3d 919, 923 (Cal. Ct. App. 1986)).

17  The elements of a negligent misrepresentation cause of action

18  differ only with respect to the requisite state of mind.  Id.; JMP

19  Sec. LLP v. Altair Nanotechnologies Inc., --- F. Supp. 2d ---, 2012

20  WL 3010965, at *10 (N.D. Cal. 2012).  Here, Plaintiff's negligent

21  misrepresentation claim relies on allegations identical to those

22  supporting his intentional misrepresentation claim.  Compare Am.

23  Compl. ¶¶ 79-82 with id. ¶¶ 84-87.  Because these claims sound in

24  fraud, Plaintiff must plead the circumstances of the purported

25  fraud with particularity, though he may allege intent generally.

26  Fed. R. Civ. P. 9(b).

27      Both of Plaintiff's misrepresentation claims fail for

28  insufficient pleading.  Plaintiff's allegations of the purported

19

**United States District Court**
For the Northern District of California

1  promises made to him by Defendant's agents are substantially the

2  same as those underlying his promissory estoppel claim.  Leaving

3  aside the issue of whether the economic loss rule prohibits

4  Plaintiff from seeking tort damages for what appears to be a

5  contract claim, see, e.g., JMP, 2012 WL 3010965, at *10-12,

6  Plaintiff's allegations are not sufficient to support a fraud

7  claim.  Plaintiff identifies, at best, the thrust of what was said

8  and in what month it was said.  Though this is enough (barely) to

9  satisfy the relatively relaxed pleading standard required for

10  promissory estoppel, see supra Section IV.F, it is not enough to

11  plead fraud.  Moreover, while Plaintiff's promissory estoppel claim

12  focuses on Defendant's alleged promises not to foreclose or

13  otherwise penalize Plaintiff for going late on his payments,

14  Plaintiff's intentional fraud claim muddies the waters by

15  suggesting that the alleged fraudulent promise was one to "provide

16  Plaintiff [with] a HAMP modification."  Am. Compl. ¶ 81.

17      Given that Plaintiff has yet to clearly and consistently

18  allege the content of the allegedly fraudulent promise or specify

19  the instances when it occurred or why it was false, see Cafasso,

20  637 F.3d at 1055, the Court DISMISSES his intentional and negligent

21  misrepresentation claims as insufficiently pled.  Plaintiff has

22  leave to amend them, but must plead specifically what was promised

23  and on what date, along with the other elements of the claims.

24      **J.   Claim 9: UCL**

25      The UCL prohibits unfair competition, including, inter alia,

26  "any unlawful, unfair or fraudulent business act."  Cal. Bus. &

27  Prof. Code § 17200.  "Because [section 17200] is written in the

28  disjunctive, it establishes three varieties of unfair competition--

**United States District Court**
For the Northern District of California

1  acts or practices which are unlawful, or unfair, or fraudulent."

2  Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554

3  (Cal. Ct. App. 2007).  Plaintiff's UCL claim is no model of

4  clarity, but he appears to bring his UCL claim under the

5  "unfairness" prong.  The standards applicable to this cause of

6  action are something of a moving target, even for California's

7  appellate courts.  See Boschma v. Home Loan Ctr., Inc., 198 Cal.

8  App. 4th 230, 252 (Cal. Ct. App. 2011) (reviewing California

9  appellate courts' differing standards for UCL unfairness); Bardin

10 v. Daimlerchrysler Corp., 136 Cal. App. 4th 1255, 1261 (2006)

11 (same, and asking California Legislature or Supreme Court to

12 clarify standard).  Plaintiff invokes the "tethering" standard used

13 by some, though by no means all, California courts.  Am. Compl. ¶

14 92.  Under this standard, Plaintiff must show that the public

15 policy which is a predicate to his UCL unfairness claim is

16 "tethered" to a specific constitutional, statutory, or regulatory

17 provision.  Boschma, 198 Cal. App. 4th at 252.

18     Plaintiff asserts that the conduct underlying his claims for

19 breach of the implied covenant of good faith, intentional

20 misrepresentation, and negligent misrepresentation "constitute[]

21 unfair competition" under the UCL.  Am. Compl. ¶¶ 92-95.  However,

22 as discussed supra in Sections IV.F and IV.I, all three of these

23 claims fail as insufficiently pled.  Consequently, Plaintiff's UCL

24 claim fails as insufficiently pled.

25     Beyond Plaintiff's failures of factual pleading, Plaintiff

26 fails to clearly and consistently identify the legal underpinnings

27 of his UCL claim.  First, the Court is concerned that Plaintiff is

28 mixing the tethering approach appropriate to claims brought under

1   the UCL's "unfairness" prong with the "borrowing" approach

2   applicable to claims brought under the "unlawfulness" prong.  The

3   two prongs are analytically distinct theories of recovery with

4   different standards.  See Boschma, 198 Cal. App. 4th at 252

5   (distinguishing prongs and explaining differing standards).

6   Confusingly, Plaintiff cites to discussions of both standards

7   without acknowledging that they are different.  Second, the Court

8   is troubled by portions of Plaintiff's opposition which suggest

9   that his UCL claim is based on all of his other claims, as opposed

10  to the three identified in his pleading.  Compare Opp'n to MTD at

11  21-22 with Am. Compl. ¶¶ 93-95.  Plaintiff's inconsistent

12  articulation of his own UCL claim underscores the extent to which

13  he has failed to adequately put Defendant on notice.

14      Plaintiff's UCL claim is DISMISSED.  Plaintiff has leave to

15  amend this claim but is advised that a failure to plead specific

16  facts giving rise to a plausible claim to relief under an

17  identifiable, cognizable legal theory may subject this claim to

18  dismissal with prejudice.

19      **K.   Motion to Strike**

20      Defendant's Rule 12(f) motion to strike challenges only the

21  portions of Plaintiff's amended complaint that mention punitive

22  damages or attorney fees, and seeks to have them struck on the

23  ground that such relief is precluded as a matter of law.  However,

24  "Rule 12(f) does not authorize district courts to strike claims for

25  damages on the ground that such claims are precluded as a matter of

26  law." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974-75

27  (9th Cir. 2010).  Rule 12(f) may not be used to make an end-run

28  around Rule 12(b)(6) standards or summary judgment procedures.  See

1   id. at 974.   If Defendant wishes to challenge Plaintiff's right to

2   attorney fees or punitive damages, nothing prevents it from doing

3   so in a proper motion.   However, a Rule 12(f) motion is not such a

4   motion.   Accordingly, Defendant's motion to strike is DENIED.

5

6   **V.**   **CONCLUSION**

7        For the foregoing reasons, the Court GRANTS IN PART AND DENIES

8   IN PART Defendant Bank of America N.A.'s motion to dismiss

9   Plaintiff Ted F. Harvey's amended complaint.   The Court orders as

10  follows:

11       • Claim 1 (ECOA) is DISMISSED WITH LEAVE TO AMEND.

12       • Claim 2 (Implied Covenant of Good Faith and Fair Dealing)

13         is DISMISSED WITH LEAVE TO AMEND.

14       • Claim 3 (Reformation of Contract) is DISMISSED.   Plaintiff

15         may amend his complaint to seek the remedy of reformation

16         but must assert a separate claim on which such relief can

17         be granted.

18       • Claim 4 (Promissory Estoppel) remains undisturbed.

19       • Claim 5 (Wrongful Foreclosure) is DISMISSED WITH LEAVE TO

20         AMEND.

21       • Claim 6 ("False Light" Invasion of Privacy) is DISMISSED

22         WITH PREJUDICE.

23       • Claim 7 (Intentional Misrepresentation) is DISMISSED WITH

24         LEAVE TO AMEND.

25       • Claim 8 (Negligent Misrepresentation) is DISMISSED WITH

26         LEAVE TO AMEND.

27       • Claim 9 (UCL) is DISMISSED WITH LEAVE TO AMEND.

28

**United States District Court**
For the Northern District of California

1    The Court DENIES Defendant's motion to strike the portions of

2  Plaintiff's amended complaint pertaining to attorney fees and

3  punitive damages.

4    Plaintiff has leave to file a second amended complaint within

5  thirty (30) days of the signature date of this order.

6

7    IT IS SO ORDERED.

8

9    Dated: October 26, 2012          

10                                     UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California